IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA et al., § § Plaintiffs, § § v. § § DENTAL HEALTH PROGRAMS INC et al., § § Defendants. § § § | Civil Action No. 3:18-CV-00463-E |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Dental Health Programs, Inc.; DentaQuest USA Insurance Company, Inc.; and Dentaquest LLC (collectively, "Defendants") Motion to Enforce Settlement Agreement, which seeks enforcement of a settlement agreement reached after a mediation that occurred in February 2023. (ECF Nos. 152; 153). Relator Dr. Sujatha Govindarajan[1] has responded. (ECF No. 155). Defendants thereafter replied. (ECF No. 159). Upon review of the briefing, appendices, and evidence raised to the Court and for the reasons discussed below, Defendants' Motion to Enforce Settlement Agreement is GRANTED.

### I.  BACKGROUND

**A. Plaintiff's Claims and Mediation**

On February 26, 2018, Govindarajan filed a complaint alleging violations of the False Claims Act (FCA) and the Texas Medicaid Fraud Prevention Act (TMFPA)—including claim(s) of retaliation. (ECF No. 2). Relator amended her complaint three times. (ECF Nos. 14; 37; 107). On July 29, 2021, the Court entered a memorandum opinion and order, which dismissed several

---

[1] The Parties and Relator sometimes refer to Relator as "Sue Rajan." (*See, e.g.*, ECF No. 155 at 29). The Court refers to Relator as Govindarajan.

claims but permitted certain claims to proceed. (*See* ECF No. 122 at 28) ("Relator's claims as to retaliatory acts alleged after February 26, 2015 against CDC remain.").

On February 28, 2023, the Parties participated in mediation before a private mediator (Mediator). (*See* ECF No. 134) (appointing Mediator and setting deadline to mediate on or before May 1, 2023). The mediation resulted in a settlement in which Defendants were to pay $5 million to Govindarajan, and both Parties assented to this settlement in writing:



(ECF No. 154 at 9-10). On March 7, 2023, Defendants' counsel sent Relator's counsel a draft settlement agreement to memorialize their agreement. (ECF No. 154 at 5). On March 10, 2023, the Mediator filed an Alternative Dispute Resolution Summary, which states:

> Although the case did not settle on the day of the mediation, the Mediator and the Relator and Defendants continued working towards settlement and ***the Relator and Defendants have now reached a settlement in principle.*** Counsel for the Relator and Defendants are consulting with counsel for the United States and the State of Texas regarding the terms of the settlement.

(ECF No. 143 at 1) (emphasis added in bold italics). On May 31, 2023, the United States and the state of Texas informed the Parties of their consent to dismissal of this litigation. *See* 31 U.S.C. § 3730(b)(1) (requiring that a civil action for false claims "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."); Tex. Hum. Res. Code Ann. § 36.102(e) (requiring that "[a]n action under this subchapter [TMFPA] may be dismissed only if the court and the attorney general consent in writing to the dismissal and state their reasons for consenting.).

### B. Post-Mediation Draft Settlement Agreement Revisions and Motion to Enforce

On June 9, 2023, Govindarajan's counsel Tucker submitted a revised settlement agreement to Defendants; this June 9, 2023 draft contained non-substantive changes: "the method and dates of payment, as well as the non-disparagement provision of the formal settlement agreement." (ECF No. 154 at 5). The Parties further exchanged minor revisions to the settlement agreement, which resulted in a June 21, 2023 draft settlement agreement. (ECF No. 154 at 5-6). However, on June 28, 2023, Govindarajan's counsel Tucker submitted another revised settlement agreement, which contained (i) several changes to payees of the settlement agreement and (ii) material additions and new agreements as to the Parties' non-disparagement agreement. (ECF No. 154 at 6, 15-33). Govindarajan's draft, *inter alia*, releases all claims in this litigation. (ECF No. 154 at 19). Thereafter, Govindarajan refused to execute a formal settlement agreement.

On October 11, 2023, Defendants moved to enforce the settlement agreement. (ECF No. 152). In appendix, Defendants submitted to the Court a redline draft of the formal settlement agreement—with Govindarajan's deletions in red and her additions in blue. (ECF No. 154 at 15-33). Govindarajan filed a brief pro se but did not file any evidence. (ECF No. 155). On November 2, 2023, the Court held a hearing in which Govindarajan testified as to the settlement agreement.

(ECF No. 161). On November 13, 2023, Defendants replied on their motion to enforce. (ECF No. 159). Having been fully briefed, the motion to enforce is ripe for adjudication.

## II.    LEGAL STANDARD

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir.1994). Federal law determines whether a settlement agreement is valid "where [as here] the substantive rights and liabilities of the parties derive from federal law." *Mid–S. Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984). Under federal law, settlement agreements are contracts. *Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir.1992). A binding settlement "agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Lopez v. Kempthorne,* 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (citing *Turner Marine Fleeting, Inc. v. Quality Fab & Mech., Inc.,* 2002 WL 31819199, at *4 (E.D. La. Dec.13, 2002)).

"A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Tex.,* 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010) (citing *Daftary* v. *Metro. Life Ins. Co.,* 136 F.3d 137, 1998 WL 30059, at * 1 (5th Cir. Jan.12, 1998) (per curiam) ("*Daftary II"* )). "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Weaver*, 2010 WL 1904561, at *2 (quoting *Bell*, 36 F.3d at 449; *see, e.g.*, *Henry v. BG of Dallas Corp.*, No. 3:13-CV-2060-BF, 2014 WL 10919570, at *1 (N.D. Tex. Oct. 8, 2014) (discussing the same).

### III.   ANALYSIS

The question before the court is whether the Parties entered a valid, enforceable agreement to settle this litigation. For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms, and a meeting of the minds among the parties. *Johnson v. BP Exploration & Prod.*, 786 F.3d 344, 355-59 (5th Cir. 2015).[2] Defendants argue that all pre-requisites for enforcement of the settlement agreement have been met. In response, Govindarajan does not challenge the validity of the settlement agreement; Govindarajan concedes she accepted the settlement offer. (ECF No. 155).

As found in the record, the Parties agreed in writing to settle this litigation with the requirement of Defendants to pay $5 million by signature. (ECF No. 154 at 9-10). Then, the Parties exchanged several drafts of a formal settlement agreement. (ECF No. 154 at 5-7, 15-32). During the Court's November 3, 2023 hearing, Govindarajan testified regarding the settlement agreement—that she agreed to release her remaining retaliation claims for the $5 million offer that Defendants tendered during mediation. (ECF No. 161 at 32) ("So I went ahead and said okay to the mediator's proposal on that day."). Govindarajan testified during an exchange with the Court on the settlement agreement:

> [Govindarajan]: I mean, in the sense – the legally-binding enforceable, I'm accepting it.
> . . . .
> [The Court]: It surprises me that a dentist who signed an agreement, a settlement agreement -- settled, as in settled, as in resolve. The world [sic] settle means to resolve -- it surprises me that you would sign something and not think that that was the end of it. That surprises me.

---

[2] *See also, e.g., In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) ("[A] binding contract requires (1) an offer; (2) an acceptance in strict **\*280** compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.") (internal quotation omitted).

> [Govindarajan]: Yeah, I'm sorry that -- at that point, I guess it didn't occur to me. But later on, after they filed the enforcement, I'm accepting it that it is binding and enforceable. I am going to accept it.
>
> [The Court]: And do you understand from their perspective that they could -- it's probably not reasonable for them to -- to think that that would leave wiggle room to go back and renegotiate? If you sign a settlement agreement, they -- they would think that it was over, too.
>
> [Govindarajan]: Absolutely. And they are correct. They -- I agree. I respect the legal lawyer's opinion. And that is something that -- it was me that -- at that time that that occurred to me. So I respect that they -- I am not expecting them to renegotiate.

(ECF No. 161 at 50-51). Thus, the record contains evidence that the Parties entered into a binding agreement to settle their dispute. Defendants offered to settle this litigation for consideration in the amount of $5 million; Govindarajan accepted this offer.

As indicated in her briefing, Govindarajan expresses concerns with the formal settlement agreement drafts and concerns regarding discovery on her settled claims. (ECF No. 155). However, "[a] reluctant or 'grumbling' acceptance . . . is still an acceptance." *Sprague v. Kroger Tex., LP*, No. 4:17-CV-00874-O, 2019 WL 885236, at *6 (N.D. Tex. Feb. 5, 2019) (collecting cases), *report and recommendation adopted*, No. 4:17-CV-00874-O, 2019 WL 859686 (N.D. Tex. Feb. 22, 2019).[3] As briefed, Govindarajan offers no challenge to the terms of the settlement: that

---

[3] The *Sprague* opinion collects the following cases:

> *See e.g. Martin v. NAES Corp.*, No. 6:12-CV-00058, 2013 WL 5945655, at *5 (W.D. Va. Nov. 6, 2013), *aff'd*, 583 Fed. App'x. 162 (4th Cir. 2014) (internal quotations omitted) ("[p]laintiff has never provided evidence that [defendant] in any way improperly threatened or coerced him into signing the transfer offer letter ... Without any such coercion, there can be no duress, and thus Plaintiff's 'Signed under Duress' notation is nothing more than an expression of dissatisfaction with the paperwork he nevertheless signed"); *Bell v. General Motors*, No. 11-10905, 2012 WL 2680909, at *3 (E.D. Mich. July 6, 2012) (granting enforcement of settlement despite "under duress notation" where there was "no evidence that [plaintiff] was ever threatened in such a way that overcame her free will"); *Parker v. Key Plastics, Inc.*, 68 F. Supp. 2d 818, 826 (E.D. Mich. 1999) (granting enforcement of settlement despite "under duress notation" where duress claimed was "nothing more than economic pressure [which is] insufficient to demonstrate unlawful coercion"); *Deluca v. Bear Sterns & Co.*, 175 F. Supp. 2d 102, 114, 116 (D. Mass. 2001) (granting enforcement of settlement despite "under duress" notation where "[plaintiff] points to no action by

Govindarajan would release her claims in this litigation for a $5 million payment from Defendants. (*See* ECF No. 155 at 11-17). Govindarajan's briefing avers that she does not repudiate or reject the settlement agreement. (ECF No. 155 at 6) ("Relator clarifies that she is not rejecting the settlement agreement for her retaliation claims after Government approved the $5 million amount."). The Parties had a meeting of the minds[4] of the essential terms of the settlement in writing. The record shows Govindarajan knowingly and voluntarily agreed to settle her claims, and no change of circumstances warrants repudiation of the agreement. *See Weaver*, 2010 WL 1904561, at *2. Accordingly, the Court GRANTS Defendants' Motion to Enforce Settlement Agreement.[5]

---

[defendant's] employee which overcame her will in particular ... [plaintiff's] notation on the Agreement [is] such a 'grumbling acceptance' "); *Mass. Hous. Fin. Agency v. Whitney House Assocs.*, 638 N.E.2d 1378, 1380 (Mass. App. Ct. 1994) ("[A] comment, purported clarification, or expression of dissatisfaction appended to an acceptance ... constitutes an acceptance nonetheless").

*Sprague v. Kroger Tex., LP*, No. 4:17-CV-00874-O, 2019 WL 885236, at *6 (N.D. Tex. Feb. 5, 2019), *report and recommendation adopted*, No. 4:17-CV-00874-O, 2019 WL 859686 (N.D. Tex. Feb. 22, 2019).

[4] "Generally, there is a meeting of the minds among the parties on 'all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims.'" *Sprague*, 2019 WL 885236, at *5 (quoting *Johnson v. BP Exploration & Prod.*, 786 F.3d 344, 355-59 (5th Cir. 2015)).

[5] Defendants provide some briefing on whether to enforce the settlement agreement under the legal standard(s) of Texas law. A court exercising diversity jurisdiction applies the law of the state in which the settlement agreement was negotiated and is to be performed. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11 [of the] Texas Rules of Civil Procedure ('Texas Rule 11')." *Borden v. Banacom Manufacturing and Marketing, Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988). Under Texas Rule 11, "a settlement agreement is enforceable only if it is (1) 'in writing, signed[,] and filed with the papers as part of the record' or (2) 'made in open court and entered of record.' " *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citing Tex. R. Civ. P. 11; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000)).

The dispositive difference between the federal and Texas standards as applicable to the instant case is that "[f]ederal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d

## IV. CONCLUSION

For the reasons enumerated hereabove, the Court GRANTS Defendants' Motion to Enforce Settlement Agreement. (ECF No. 152). The Court enters the following orders:

**IT IS ORDERED THAT:**

1. Defendants shall pay $5,000,000.00 into the registry of this Court on or before fourteen (14) days from the date of this Order. These funds shall not be disbursed to Relator until entry of a final, non-appealable judgment in this case and subject to resolution of Lynn Pinker Hurst & Schwegmann, LLP's equitable lien on those proceeds.

2. Govindarajan shall execute a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) on or before fourteen (14) days from the date of this Order. The stipulation of dismissal shall dismiss this action and all corresponding claims (i) with prejudice as to Dr. Sujatha Govindarajan, and (ii) without prejudice, as to the United States of America and the State of Texas.

3. Nothing in this Order shall prevent the parties from agreeing to additional terms in connection with the settlement of this action that they may find mutually agreeable.

4. Failure to comply with the orders herein may result in sanction.

5. The Court shall follow this order with a Final Judgment. The Court INSTRUCTS the Clerk of the Court to leave this proceeding open until the entry of a Final Judgment.

**SO ORDERED.**

19th day of July, 2024.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE

---

1207, 1209 (5th Cir. 1981) (per curiam)). Here, the settlement agreements have been reduced to writing, so the Court would reach the same result under Texas law. *See generally In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) ("[F]ederal contract law is largely indistinguishable from general contract principles under state common law.").